# EXHIBIT "A"

## PROMISSORY NOTE

U.S. $35,000.00
Loan No. 1071-01

February 2, 2007
Oak Ridge, Tennessee

FOR VALUE RECEIVED, the undersigned, TIMOTHY G. KRUSE DBA CRUZIN' MACHINE, a Tennessee sole proprietorship (the "Borrower"), promises to pay to the order of SOUTHEAST COMMUNITY CAPITAL CORPORATION, its successors and assigns (the "Holder"), the principal sum of Thirty Five Thousand Dollars ($35,000.00) or so much thereof as shall have been advanced by the Holder to or for the benefit of the Borrower hereunder with interest thereon as provided herein.

1.  Interest Rate. The unpaid principal balance of this Promissory Note (the "Note") shall bear interest at the nominal rate of ELEVEN and a HALF Percent (11.5%) per annum. Interest on the Notes shall accrue from the date the Holder provides the Borrower the principal sum until repayment of the principal and payment of all accrued interest in full. Interest on this Note shall be computed on the basis of (i) a 365-day year and (ii) the actual number of days elapsed. Notwithstanding the foregoing provisions of this Section, but subject to applicable law, upon the occurrence and during the continuance of an Event of Default (as defined below), the principal of and interest on this Note shall bear interest, from the date of the occurrence of such Event of Default until such Event of Default is cured or waived, or until all principal and interest (including default interest) hereunder is paid in full, at an interest rate equal to the Prime Rate of interest published from time to time in the Money Rates Section of the *Wall Street Journal*, as adjusted from day to day, plus Eight Percent (8.0%), provided however that said interest rate shall not exceed eighteen percent (18%) per annum.

2.  Payment Terms and Maturity Date. All amounts due must be paid-in-full on or before the Maturity Date of February 2, 2012. The first payment shall be due March 1, 2007. The minimum monthly payment shall be an amount that would fully amortize the principal balance at the nominal Interest Rate by the Maturity Date. If a payment is made more than 15 days after it is due, the Borrower agrees to pay a late charge of 5% of the payment due in addition to the payment due. The Borrower may prepay all or part of the principal balance of this Note without any prepayment penalty.

3.  Security Interest. This Note is secured by a certain Security Agreement of even date herewith ("Security Agreement"), between Borrower and Holder to which reference is made as to additional prepayment and acceleration rights.

4.  Defaults and Remedies.

    (a)  Event of Default. An "Event of Default" shall occur hereunder if:

        (i)  Any failure to pay, promptly as and when due, the principal and interest of the indebtedness secured hereby or any other monetary obligations or indebtedness of the Borrower to the Holder;

        (ii)  Any failure by the Borrower to duly observe any covenant, condition, agreement of this Security Agreement or this Note;

(iii)    Any breach or failure of the Borrower to perform any term or condition of any mortgage or deed of trust or security agreement, assignment of rents, loan agreement, or other instrument executed by the Borrowers in connection with the indebtedness secured hereby or as security for the payment of this Note;

(iv)    The insolvency or bankruptcy of the Borrower, the making by the Borrower of an assignment for the benefit of creditors, or the consent of the Borrower to the appointment of a trustee or receiver or other officer of the court or other tribunal;

(v)    The appointment of a trustee, receiver or other officer of the court for the Borrower, or for a substantial part of the properties of the Borrower, without the Borrower's consent, where no discharge is effected within forty-five (45) days;

(vi)    The institution of bankruptcy, reorganization, insolvency, or liquidation proceedings by or against the Borrower, and if against the Borrower, where such proceeding is consented to by it or has not been dismissed within forty-five (45) days;

(vii)    The entry of any judgment against the Borrower in excess of One Thousand Dollars ($1,000.00) or the issuance of entry of any attachment, replevin levy or lien against the collateral, if not discharged, bonded or dismissed within forty-five (45) days;

(viii)    The giving of any statement, certificate or representations in or pursuant to this Security Agreement or this Note proving to be untrue in any material respect as of the time made;

(ix)    The assertion of any claim or priority over the Security Agreement by title, lien or otherwise in any legal or equitable proceeding that is not dismissed or bonded within forty-five (45) days;

(x)    The death, insolvency or bankruptcy of any guarantor of the indebtedness secured hereby or any part thereof;

(xi)    The indictment or conviction of the Borrower or any guarantors of the indebtedness secured hereby for the violation of a felony criminal statute and/or for the failure to pay state or federal taxes;

(xii)    The occurrence of any event or the presence of any condition which causes the Holder in good faith to feel insecure regarding the likelihood of the Holder receiving orderly and complete payment according to the terms of this Note or other documents executed in connection with the indebtedness secured hereby without proceeding against any collateral or seeking payment from any surety or guarantor;

(xiii)    Any material uninsured loss, theft, damage or destruction to the collateral for this Note occurs; or

(xiv)   The Borrower disposes of all or any part of the collateral for this Note other than in the ordinary course of business, or divests itself by sale or otherwise of the control over, or any goodwill of, its business, or fails to carry on its business for any reason whatsoever.

(b)   <u>Ability to Cure Defaults</u>.  Said events shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of ten (10) days after written notice to the Borrower pursuant to <u>Section 12</u> hereof, and (ii) with regard to any other event stated above for which no time limit is specified, such event continues for a period of fifteen (15) days after written notice to the Borrower pursuant to <u>Section 12</u> hereof.  Said notice provisions and any other notice provisions contained in any other document shall run concurrently and not successively and no notice shall be required, and an Event of Default shall immediately occur, in the event any of said events occur after three (3) or more notices are given pursuant to <u>subparagraphs (i) or (ii)</u> of this paragraph during any twelve (12) month period.

(c)   <u>Acceleration</u>.  If an Event of Default occurs under this <u>Section 4</u>, then the outstanding principal of and interest (including default interest) on this Note shall automatically become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are expressly waived.  Upon any such declaration of acceleration, such principal and interest shall become immediately due and payable and the Holder shall be entitled to exercise all of its rights and remedies hereunder whether at law or in equity, including, without limitation, Holder's rights under the Security Agreement.

5.   <u>Suits for Enforcement</u>.  Upon the occurrence of an Event of Default, the Holder may proceed to protect and enforce its rights and remedies hereunder by suit in equity, action at law or by other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in this Note or in aid of the exercise of any power granted in this Note, or may proceed to enforce payments required by this Note, or to enforce any other legal or equitable right of the Holder.  If Holder engages legal counsel for the enforcement of any terms of this Note, whether for suit or other legal services required to secure compliance on the part of the Borrower, Borrower shall pay to Holder upon demand said legal fees and any other expenses incurred by Holder, including, without limitation, court costs, and the fees and expenses of attorneys and paralegals, court reporters, appraisers, consultants, and other experts consulted by Holder.

6.   <u>Remedies Cumulative</u>.  No remedy herein conferred upon the Holder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

7.   <u>Interest Compounded</u>.  Any accrued but unpaid interest on this Note shall be added to principal on a monthly basis and interest shall accrue on any accrued but unpaid interest added to principal.

8.   <u>Prepayments</u>.  The Borrowers shall have the right to prepay the accrued interest and principal balance of this Note only if the Borrower provides Holder with written notice at least ten (10) days prior to such prepayment.

9.  <u>Access to Financials</u>.  Upon thirty (30) days of any written request, the Borrower shall deliver to the Holder any and all financial reports, tax returns and other financial or tax related information requested by the Holder during the term of this Note unless required sooner under Section 20.

10. <u>Assignment</u>.  This Note may be transferred, assigned, pledged, encumbered or hypothecated in any manner in whole or in part by the Holder.  This Note may not be assigned or transferred by the Borrower without the Holder's written consent.

11. <u>Payments</u>.  All payments and prepayments of principal of and interest on this Note shall be made in lawful money of the United States of America.

12. <u>Notices</u>.  All notices, requests, demands and communications which are or may be required to be given hereunder shall be deemed effectively given if and when (i) personally delivered, or (ii) deposited in the United States Mail, postage prepaid, certified or registered mail, return receipt requested, or forwarded by a nationally recognized overnight courier service, to the following addresses:

    If to Borrowers:    Cruzin' Machine
                        Attention: Mr. Timothy G. Kruse, Owner
                        126 Elvin Hill Rd
                        Maynardville, TN 37807

    If to Holder:       Southeast Community Capital Corporation
                        Attention: Ms. Tracey Larsen
                        1020 Commerce Park Drive, Suite L
                        Oak Ridge, Tennessee 37830

13. <u>Amendments</u>.  This Note may be amended only if agreed to in writing by the Borrower and the Holder.

14. <u>Covenants Bind Successors and Assigns</u>.  All the covenants, stipulations, promises and agreements contained in this Note by or on behalf of the Borrower shall bind its successors and assigns, whether so expressed or not.

15. <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the laws of the State of Tennessee, without regards to conflicts of laws principles.

16. <u>Variation in Pronouns</u>.  All pronouns and any variations thereof refer to the masculine, feminine or neuter, singular or plural, as the context may require.

17. <u>Headings</u>.  The headings in this Note are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

18. <u>Time of the Essence</u>.  Time is of the essence for all terms, provisions and conditions of this Note.

19. <u>Usury</u>.  It is the intention of Holder and the Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event and upon no contingency shall Holder ever be entitled to receive, collect or apply as interest any interest, fees, charges or other

payments equivalent to interest, in excess of the maximum rate which Holder may lawfully charge under applicable statutes and laws from time to time in effect.  In determining whether or not the interest paid or payable, under any specific contingency, exceeds the highest contract rate permitted by applicable law from time to time in effect, the Borrower and Holder shall, to the maximum extent permitted under applicable law, characterize the non-principal payment as a reasonable loan charge, rather than as interest.  Any provision hereof, or of any other agreement between Holder and the Borrower, that operates to bind, obligate or compel the undersigned to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only.  The provisions of this Section shall be given precedence over any other provision contained herein or in any other agreement between Holder and the Borrower that is in conflict with the provisions of this Section.

20.  <u>Small Business Administration Statement</u>.  This note has been pledged to the U.S. Small Business Administration (SBA) as collateral.  Further assignment cannot be made without prior written consent of SBA.

21.  <u>Verification</u>.  The Company verifies via this Note that it is unable to find similar financing elsewhere.

22.  <u>Section 612 of Public Law 103-403 dated October 22, 1994</u>.  The Company certifies that all principals of the Company, who own 50% or more of the voting interests of the Company, are not more than 60 days delinquent with regard to child support.

23.  <u>Additional Covenants</u>:  Borrower agrees to the following:

a)  Timothy G. Kruse shall obtain key-person life insurance or assign a portion of existing life insurance to Lender in the amount of $56,000.
b)  Borrower must provide evidence of and maintain adequate insurance, including liability, on Collateral.
c)  Borrower must agree to Technical Assistance as needed from Lender.  There is no charge for this service.
d)  Borrower will furnish current financial statements to Lender quarterly, including at a minimum a profit & loss statement, a balance sheet, and a cash flow report.
e)  Borrower will be required to close all credit card accounts except one for incidental business expenses.

IN WITNESS WHEREOF, this Note has been executed by the Borrower effective as of the day and year first above written.

Timothy G. Kruse DBA Cruzin' Machine

By  _____

Timothy G. Kruse
Owner
SSN: 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

_____

Timothy G. Kruse
Individually
SSN: 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

## PROMISSORY NOTE

U.S. $11,000.00                                                February 2, 2007
Loan No. 1071-02                                           Oak Ridge, Tennessee

FOR VALUE RECEIVED, the undersigned, TIMOTHY G. KRUSE DBA CRUZIN' MACHINE, a Tennessee sole proprietorship (the "Borrower"), promises to pay to the order of SOUTHEAST COMMUNITY CAPITAL CORPORATION, its successors and assigns (the "Holder"), the principal sum of Eleven Thousand Dollars ($11,000.00) or so much thereof as shall have been advanced by the Holder to or for the benefit of the Borrower hereunder with interest thereon as provided herein.

1.  Interest Rate. The unpaid principal balance of this Promissory Note (the "Note") shall bear interest at the nominal rate of ELEVEN and a HALF Percent (11.5%) per annum. Interest on the Notes shall accrue from the date the Holder provides the Borrower the principal sum until repayment of the principal and payment of all accrued interest in full. Interest on this Note shall be computed on the basis of (i) a 365-day year and (ii) the actual number of days elapsed. Notwithstanding the foregoing provisions of this Section, but subject to applicable law, upon the occurrence and during the continuance of an Event of Default (as defined below), the principal of and interest on this Note shall bear interest, from the date of the occurrence of such Event of Default until such Event of Default is cured or waived, or until all principal and interest (including default interest) hereunder is paid in full, at an interest rate equal to the Prime Rate of interest published from time to time in the Money Rates Section of the *Wall Street Journal*, as adjusted from day to day, plus Eight Percent (8.0%), provided however that said interest rate shall not exceed eighteen percent (18%) per annum.

2.  Payment Terms and Maturity Date. All amounts due must be paid-in-full on or before the Maturity Date of February 2, 2012. The first payment shall be due March 1, 2007. The minimum monthly payment shall be an amount that would fully amortize the principal balance at the nominal Interest Rate by the Maturity Date. If a payment is made more than 15 days after it is due, the Borrower agrees to pay a late charge of 5% of the payment due in addition to the payment due. The Borrower may prepay all or part of the principal balance of this Note without any prepayment penalty.

3.  Security Interest. This Note is secured by a certain Security Agreement of even date herewith ("Security Agreement"), between Borrower and Holder to which reference is made as to additional prepayment and acceleration rights.

4.  Defaults and Remedies.

    (a)  Event of Default. An "Event of Default" shall occur hereunder if:

        (i)  Any failure to pay, promptly as and when due, the principal and interest of the indebtedness secured hereby or any other monetary obligations or indebtedness of the Borrower to the Holder;

        (ii)  Any failure by the Borrower to duly observe any covenant, condition, agreement of this Security Agreement or this Note;

(iii)    Any breach or failure of the Borrower to perform any term or condition of any mortgage or deed of trust or security agreement, assignment of rents, loan agreement, or other instrument executed by the Borrowers in connection with the indebtedness secured hereby or as security for the payment of this Note;

(iv)    The insolvency or bankruptcy of the Borrower, the making by the Borrower of an assignment for the benefit of creditors, or the consent of the Borrower to the appointment of a trustee or receiver or other officer of the court or other tribunal;

(v)    The appointment of a trustee, receiver or other officer of the court for the Borrower, or for a substantial part of the properties of the Borrower, without the Borrower's consent, where no discharge is effected within forty-five (45) days;

(vi)    The institution of bankruptcy, reorganization, insolvency, or liquidation proceedings by or against the Borrower, and if against the Borrower, where such proceeding is consented to by it or has not been dismissed within forty-five (45) days;

(vii)    The entry of any judgment against the Borrower in excess of One Thousand Dollars ($1,000.00) or the issuance of entry of any attachment, replevin levy or lien against the collateral, if not discharged, bonded or dismissed within forty-five (45) days;

(viii)    The giving of any statement, certificate or representations in or pursuant to this Security Agreement or this Note proving to be untrue in any material respect as of the time made;

(ix)    The assertion of any claim or priority over the Security Agreement by title, lien or otherwise in any legal or equitable proceeding that is not dismissed or bonded within forty-five (45) days;

(x)    The death, insolvency or bankruptcy of any guarantor of the indebtedness secured hereby or any part thereof;

(xi)    The indictment or conviction of the Borrower or any guarantors of the indebtedness secured hereby for the violation of a felony criminal statute and/or for the failure to pay state or federal taxes;

(xii)    The occurrence of any event or the presence of any condition which causes the Holder in good faith to feel insecure regarding the likelihood of the Holder receiving orderly and complete payment according to the terms of this Note or other documents executed in connection with the indebtedness secured hereby without proceeding against any collateral or seeking payment from any surety or guarantor;

(xiii)    Any material uninsured loss, theft, damage or destruction to the collateral for this Note occurs; or

(xiv)    The Borrower disposes of all or any part of the collateral for this Note other than in the ordinary course of business, or divests itself by sale or otherwise of the control over, or any goodwill of, its business, or fails to carry on its business for any reason whatsoever.

(b)    <u>Ability to Cure Defaults</u>.  Said events shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of ten (10) days after written notice to the Borrower pursuant to <u>Section 12</u> hereof, and (ii) with regard to any other event stated above for which no time limit is specified, such event continues for a period of fifteen (15) days after written notice to the Borrower pursuant to <u>Section 12</u> hereof. Said notice provisions and any other notice provisions contained in any other document shall run concurrently and not successively and no notice shall be required, and an Event of Default shall immediately occur, in the event any of said events occur after three (3) or more notices are given pursuant to <u>subparagraphs (i) or (ii)</u> of this paragraph during any twelve (12) month period.

(c)    <u>Acceleration</u>.  If an Event of Default occurs under this <u>Section 4</u>, then the outstanding principal of and interest (including default interest) on this Note shall automatically become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are expressly waived.  Upon any such declaration of acceleration, such principal and interest shall become immediately due and payable and the Holder shall be entitled to exercise all of its rights and remedies hereunder whether at law or in equity, including, without limitation, Holder's rights under the Security Agreement.

5.    <u>Suits for Enforcement</u>.  Upon the occurrence of an Event of Default, the Holder may proceed to protect and enforce its rights and remedies hereunder by suit in equity, action at law or by other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in this Note or in aid of the exercise of any power granted in this Note, or may proceed to enforce payments required by this Note, or to enforce any other legal or equitable right of the Holder.  If Holder engages legal counsel for the enforcement of any terms of this Note, whether for suit or other legal services required to secure compliance on the part of the Borrower, Borrower shall pay to Holder upon demand said legal fees and any other expenses incurred by Holder, including, without limitation, court costs, and the fees and expenses of attorneys and paralegals, court reporters, appraisers, consultants, and other experts consulted by Holder.

6.    <u>Remedies Cumulative</u>.  No remedy herein conferred upon the Holder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

7.    <u>Interest Compounded</u>.  Any accrued but unpaid interest on this Note shall be added to principal on a monthly basis and interest shall accrue on any accrued but unpaid interest added to principal.

8.    <u>Prepayments</u>.  The Borrowers shall have the right to prepay the accrued interest and principal balance of this Note only if the Borrower provides Holder with written notice at least ten (10) days prior to such prepayment.

9.  <u>Access to Financials</u>.  Upon thirty (30) days of any written request, the Borrower shall deliver to the Holder any and all financial reports, tax returns and other financial or tax related information requested by the Holder during the term of this Note unless required sooner under Section 20.

10. <u>Assignment</u>.   This Note may be transferred, assigned, pledged, encumbered or hypothecated in any manner in whole or in part by the Holder.  This Note may not be assigned or transferred by the Borrower without the Holder's written consent.

11. <u>Payments</u>.  All payments and prepayments of principal of and interest on this Note shall be made in lawful money of the United States of America.

12. <u>Notices</u>.  All notices, requests, demands and communications which are or may be required to be given hereunder shall be deemed effectively given if and when (i) personally delivered, or (ii) deposited in the United States Mail, postage prepaid, certified or registered mail, return receipt requested, or forwarded by a nationally recognized overnight courier service, to the following addresses:

    If to Borrowers:    Cruzin' Machine
                            Attention: Mr. Timothy G. Kruse, Owner
                            126 Elvin Hill Rd
                            Maynardville, TN 37807

    If to Holder:       Southeast Community Capital Corporation
                            Attention: Ms. Tracey Larsen
                            1020 Commerce Park Drive, Suite L
                            Oak Ridge, Tennessee 37830

13. <u>Amendments</u>.  This Note may be amended only if agreed to in writing by the Borrower and the Holder.

14. <u>Covenants Bind Successors and Assigns</u>.  All the covenants, stipulations, promises and agreements contained in this Note by or on behalf of the Borrower shall bind its successors and assigns, whether so expressed or not.

15. <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the laws of the State of Tennessee, without regards to conflicts of laws principles.

16. <u>Variation in Pronouns</u>.  All pronouns and any variations thereof refer to the masculine, feminine or neuter, singular or plural, as the context may require.

17. <u>Headings</u>.  The headings in this Note are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

18. <u>Time of the Essence</u>.  Time is of the essence for all terms, provisions and conditions of this Note.

19. <u>Usury</u>.  It is the intention of Holder and the Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event and upon no contingency shall Holder ever be entitled to receive, collect or apply as interest any interest, fees, charges or other

payments equivalent to interest, in excess of the maximum rate which Holder may lawfully charge under applicable statutes and laws from time to time in effect. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the highest contract rate permitted by applicable law from time to time in effect, the Borrower and Holder shall, to the maximum extent permitted under applicable law, characterize the non-principal payment as a reasonable loan charge, rather than as interest. Any provision hereof, or of any other agreement between Holder and the Borrower, that operates to bind, obligate or compel the undersigned to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this Section shall be given precedence over any other provision contained herein or in any other agreement between Holder and the Borrower that is in conflict with the provisions of this Section.

20. <u>Verification</u>. The Borrower verifies via this Note that it is unable to find similar financing elsewhere.

21. <u>Additional Covenants</u>: Borrower agrees to the following:

   a) Timothy G. Kruse shall obtain key-person life insurance or assign a portion of existing life insurance to Lender in the amount of $56,000.
   b) Borrower must provide evidence of and maintain adequate insurance, including liability, on Collateral.
   c) Borrower must agree to Technical Assistance as needed from Lender. There is no charge for this service.
   d) Borrower will furnish current financial statements to Lender quarterly, including at a minimum a profit & loss statement, a balance sheet, and a cash flow report.
   e) Borrower will be required to close all credit card accounts except one for incidental business expenses.


IN WITNESS WHEREOF, this Note has been executed by the Borrower effective as of the day and year first above written.

Timothy G. Kruse DBA Cruzin' Machine

By _____
Timothy G. Kruse
Owner
SSN: 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

_____
Timothy G. Kruse
Individually
SSN: 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

## Promissory Note

February 2, 2007                                                     Oak Ridge, Tennessee
Loan No. 1071-03                                                                $10,000.00

This Promissory Note (the "NOTE") is made and executed as of the date first stated above, by and between SOUTHEAST COMMUNITY CAPITAL CORPORATION ("LENDER"), and TIMOTHY G. KRUSE DBA CRUZIN' MACHINE (Borrower), a Tennessee sole proprietorship in good standing with the laws of the State of Tennessee. By this Note, the Borrower promises and agrees to pay to the order of Lender, at such place and manner as Lender may designate, the principal sum of Ten Thousand Dollars ($10,000.00), or the aggregate unpaid principal amount of all advances made by Lender to Borrower pursuant to the terms of a Revolving Line of Credit Agreement (the "LOAN AGREEMENT") of even date herewith, whichever is less, together with interest thereon from the date each advance is made until paid in full, both before and after judgment, at the nominal rate of Thirteen and one-half percent (13.5%) per annum (the "EFFECTIVE RATE").

Borrower shall pay accrued interest on the outstanding principal balance under the Note on a monthly basis commencing on March 1, 2007, and continuing on the first business day of each month thereafter until paid in full. The entire unpaid principal balance, together with any accrued interest and other unpaid charges or fees hereunder, shall be due and payable on February 2, 2008 (the "MATURITY DATE").

Prepayment in whole or part may occur at any time hereunder without penalty; provided that the Lender shall be provided with not less than five (5) days notice of the Borrower's intent to pre-pay; and provided further that any such partial prepayment shall not operate to postpone or suspend the obligation to make, and shall not have the effect of altering the time for payment of the remaining balance of the Note as provided for above, unless and until the entire obligation is paid in full. All payments received hereunder shall be applied, first, to any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; second, to accrued interest; and third, to principal.

An event of default will occur if any of the following events occurs:

(i)     Any failure to pay, promptly as and when due, the principal and interest of the indebtedness secured hereby or any other monetary obligations or indebtedness of the Borrower to the Lender;

(ii)    Any failure by the Borrower to duly observe any covenant, condition, or agreement in this Agreement, the Note, the Security Agreement or any other loan document;

(iii)   Any breach or failure of the Borrower to perform any term or condition of any mortgage or deed of trust or security agreement, assignment of rents, loan agreement, or other instrument executed by the Borrowers in connection with the indebtedness secured hereby or as security for the payment of this Note;

(iv)   The insolvency or bankruptcy of the Borrower, the making by the Borrower of an assignment for the benefit of creditors, or the consent of the Borrower to the appointment of a trustee or receiver or other officer of the court or other tribunal;

(v)   The appointment of a trustee, receiver or other officer of the court for the Borrower, or for a substantial part of the properties of the Borrower, without the Borrower's consent, where no discharge is effected within forty-five (45) days;

(vi)   The institution of bankruptcy, reorganization, insolvency, or liquidation proceedings by or against the Borrower, and if against the Borrower, where such proceeding is consented to by it or has not been dismissed within forty-five (45) days;

(vii)   The entry of any judgment against the Borrower in excess of One Thousand Dollars ($1,000.00) or the issuance of entry of any attachment, replevin levy or lien against the collateral, if not discharged, bonded or dismissed within forty-five (45) days;

(viii)   The giving of any statement, certificate or representations in or pursuant to this Agreement, the Note, or the Security Agreement proving to be untrue in any material respect as of the time made;

(ix)   The assertion of any claim or priority over the Security Agreement by title, lien or otherwise in any legal or equitable proceeding that is not dismissed or bonded within forty-five (45) days;

(x)   The death, insolvency or bankruptcy of any guarantor of the indebtedness secured hereby or any part thereof;

(xi)   The indictment or conviction of the Borrower or any guarantors of the indebtedness secured hereby for the violation of a felony criminal statute and/or for the failure to pay state or federal taxes;

(xii)   The occurrence of any event or the presence of any condition which causes the Lender in good faith to feel insecure regarding the likelihood of the Lender receiving orderly and complete payment according to the terms of this Agreement or other documents executed in connection with the indebtedness secured hereby without proceeding against any collateral or seeking payment from any surety or guarantor;

(xiii)   Any material uninsured loss, theft, damage or destruction to the collateral for the Note occurs; or

(xiv)   The Borrower disposes of all or any part of the collateral for the Note other than in the ordinary course of business, or divests itself by sale or otherwise of the control over, or any goodwill of, its business, or fails to carry on its business for any reason whatsoever.

Ability to Cure Defaults. Said events shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of ten (10) days after written notice to the Borrower, and (ii) with regard to any other event stated above for which no time limit is specified, such event continues for a period of fifteen (15) days after written notice to the Borrower. Said notice provisions and any other notice provisions contained in any other document shall run concurrently and not successively and no notice shall be required, and an Event of Default shall immediately occur, in the event any of said events occur after three (3) or more notices are given during any twelve (12) month period.

Acceleration. If an Event of Default occurs, then the outstanding principal of and interest (including default interest) under this Agreement shall automatically become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are expressly waived. Upon any such declaration of acceleration, such principal and interest shall become immediately due and payable and the Lender shall be entitled to exercise all of its rights and remedies hereunder whether at law or in equity, including, without limitation, Lender's rights under the Security Agreement.

Borrower agrees to pay all costs of collection incurred by reason of default, including but not limited to court costs and reasonable attorney's fees.

All notices, requests, demands and communications which are or may be required to be given hereunder shall be deemed effectively given if and when (i) personally delivered, or (ii) deposited in the United States Mail, postage prepaid, or forwarded by a nationally recognized overnight courier service

The Borrower hereof waives presentment for payment, protest, demand, notice of protest, notice of dishonor, and notice of nonpayment, and expressly agrees that this Note, or any payment hereunder, may be extended from time to time by the Lender without in any way affecting its liability hereunder.

In the event any payment under this Note is not made at the time and in the manner required, the Borrower agrees to pay any and all costs and expenses which may be incurred by the Lender hereof in connection with the enforcement of any of its rights under this Note or under any such other instrument, including court costs and reasonable attorneys' fees.

This Note shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee.

If a payment is made more than 15 days after it is due, the Borrower agrees to pay a late charge of 5% of the payment due in addition to the payment due.

SIGNATURE PAGE(S) FOLLOW NEXT.

IN WITNESS WHEREOF, this Note has been executed by the Borrower effective as of the day and year first above written.

Timothy G. Kruse DBA Cruzin' Machine

By _____

Timothy G. Kruse
Owner
SSN: 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

_____

Timothy G. Kruse
Individually
SSN: 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

# REVOLVING LINE OF CREDIT AGREEMENT

February 2, 2007
Loan No. 1071-03

Oak Ridge, Tennessee

This Revolving Line of Credit Agreement (the "AGREEMENT") is made and entered into on the date first written above, by and between SOUTHEAST COMMUNITY CAPITAL CORPORATION ("Lender"), and TIMOTHY G. KRUSE DBA CRUZIN' MACHINE (Borrower), a Tennessee sole proprietorship in good standing with the laws of the State of Tennessee.

In consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.  <u>LINE OF CREDIT</u>. Lender hereby establishes for a period extending to February 2, 2008 (the "MATURITY DATE") a revolving line of credit (the "CREDIT LINE") for Borrower in the principal amount of Ten Thousand Dollars ($10,000.00) (the "CREDIT LIMIT"). In connection herewith, Borrower shall execute and deliver to Lender a Promissory Note (the "NOTE") in the amount of the Credit Limit and in form and content satisfactory to Lender. All sums advanced on the Credit Line or pursuant to the terms of this Agreement (each an "ADVANCE") shall become part of the principal of said Promissory Note.

2.  <u>SECURITY INTEREST</u>. This Note is secured by a certain Security Agreement of even date herewith ("Security Agreement"), between Borrower and Lender to which reference is made as to additional prepayment and acceleration rights.

3.  <u>Intentionally Omitted</u>

4.  <u>ADVANCES</u>. Any request for an Advance may be made from time to time and in such amounts as Borrower may choose; provided, however, any requested Advance shall not, when added to the outstanding principal balance of all previous Advances, exceed the Credit Limit. Requests for Advances may be made orally or in writing by such officer of Borrower authorized by it to request such Advances. Lender will deposit the amount of any requested and approved Advance in Borrower's designated checking account via bank wire or ACH. Lender may refuse to make any requested Advance if an event of default has occurred and is continuing hereunder either at the time the request is given or the date the Advance is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an event of default hereunder as of such dates. The funds from the Advances will be used by the Borrower for operating expenses in connection with the operations of the Borrower.

5. <u>REPAYMENT</u>.

    a.    Borrower shall pay accrued interest on the outstanding principal balance on a monthly basis commencing on March 1, 2007, and continuing on the first business day of each month thereafter. The entire unpaid principal balance, together with any accrued interest and other unpaid charges or fees hereunder, shall be due and payable on the Maturity Date.

    b.    All payments shall be made to Lender at such place and in such manner as Lender may, from time to time, designate.  Generally, payment shall be made via automatic debit through the ACH system.  All payments received hereunder shall be applied, first, to any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; second, to accrued interest; and third, to principal.

    c.    Borrower may prepay principal at any time without penalty.

6. <u>INTEREST</u>. All sums advanced pursuant to this Agreement shall bear interest from the date each Advance is made until paid in full at the nominal rate of Thirteen and One-half percent (13.5%) per annum (the "EFFECTIVE RATE").

7. <u>REPRESENTATIONS AND WARRANTIES</u>. In order to induce Lender to enter into this Agreement and to make the advances provided for herein, Borrower represents and warrants to Lender as follows:

    a.    Borrower is a duly organized, validly existing, and in good standing under the laws of the State of Tennessee.

    b.    Borrower has the authority and power to execute and deliver any document required hereunder and to perform any condition or obligation imposed under the terms of such documents.

    c.    The execution, delivery and performance of this Agreement and each document incident hereto will not violate any provision of any applicable law, regulation, order, judgment, decree, article of incorporation, by-law, indenture, contract, agreement, or other undertaking to which Borrower is a party, or which purports to be binding on Borrower or its assets and will not result in the creation or imposition of a lien on any of its assets.

    d.    There is no action, suit, investigation, or proceeding pending or, to the knowledge of Borrower, threatened, against or affecting Borrower or any of its assets which, if adversely determined, would have a material adverse affect on the financial condition of Borrower or the operation of its business.

8. <u>EVENTS OF DEFAULT</u>.

   a. An "Event of Default" shall occur hereunder if:

     (i)   Any failure to pay, promptly as and when due, the principal and interest of the indebtedness secured hereby or any other monetary obligations or indebtedness of the Borrower to the Lender;

     (ii)   Any failure by the Borrower to duly observe any covenant, condition, or agreement in this Agreement, the Note, the Security Agreement or any other loan document;

     (iii)   Any breach or failure of the Borrower to perform any term or condition of any mortgage or deed of trust or security agreement, assignment of rents, loan agreement, or other instrument executed by the Borrowers in connection with the indebtedness secured hereby or as security for the payment of this Note;

     (iv)   The insolvency or bankruptcy of the Borrower, the making by the Borrower of an assignment for the benefit of creditors, or the consent of the Borrower to the appointment of a trustee or receiver or other officer of the court or other tribunal;

     (v)   The appointment of a trustee, receiver or other officer of the court for the Borrower, or for a substantial part of the properties of the Borrower, without the Borrower's consent, where no discharge is effected within forty-five (45) days;

     (vi)   The institution of bankruptcy, reorganization, insolvency, or liquidation proceedings by or against the Borrower, and if against the Borrower, where such proceeding is consented to by it or has not been dismissed within forty-five (45) days;

     (vii)   The entry of any judgment against the Borrower in excess of One Thousand Dollars ($1,000.00) or the issuance of entry of any attachment, replevin levy or lien against the collateral, if not discharged, bonded or dismissed within forty-five (45) days;

     (viii)   The giving of any statement, certificate or representations in or pursuant to this Agreement, the Note, or the Security Agreement proving to be untrue in any material respect as of the time made;

     (ix)   The assertion of any claim or priority over the Security Agreement by title, lien or otherwise in any legal or equitable proceeding that is not dismissed or bonded within forty-five (45) days;

     (x)   The death, insolvency or bankruptcy of any guarantor of the indebtedness secured hereby or any part thereof;

(xi)  The indictment or conviction of the Borrower or any guarantors of the indebtedness secured hereby for the violation of a felony criminal statute and/or for the failure to pay state or federal taxes;

(xii)  The occurrence of any event or the presence of any condition which causes the Lender in good faith to feel insecure regarding the likelihood of the Lender receiving orderly and complete payment according to the terms of this Agreement or other documents executed in connection with the indebtedness secured hereby without proceeding against any collateral or seeking payment from any surety or guarantor;

(xiii)  Any material uninsured loss, theft, damage or destruction to the collateral for the Note occurs; or

(xiv)  The Borrower disposes of all or any part of the collateral for the Note other than in the ordinary course of business, or divests itself by sale or otherwise of the control over, or any goodwill of, its business, or fails to carry on its business for any reason whatsoever.

(b)  Ability to Cure Defaults.  Said events shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of ten (10) days after written notice to the Borrower, and (ii) with regard to any other event stated above for which no time limit is specified, such event continues for a period of fifteen (15) days after written notice to the Borrower.  Said notice provisions and any other notice provisions contained in any other document shall run concurrently and not successively and no notice shall be required, and an Event of Default shall immediately occur, in the event any of said events occur after three (3) or more notices are given during any twelve (12) month period.

(c)  Acceleration.  If an Event of Default occurs, then the outstanding principal of and interest (including default interest) under this Agreement shall automatically become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are expressly waived.  Upon any such declaration of acceleration, such principal and interest shall become immediately due and payable and the Lender shall be entitled to exercise all of its rights and remedies hereunder whether at law or in equity, including, without limitation, Lender's rights under the Security Agreement.

(d)  Borrower agrees to pay all costs of collection incurred by reason of default, including but not limited to court costs and reasonable attorney's fees.

9.  SUITS FOR ENFORCEMENT.  Upon the occurrence of an Event of Default, the Lender may proceed to protect and enforce its rights and remedies hereunder by suit in equity, action at law or by other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in this Agreement or the Note or in aid of the exercise of any power granted in this Agreement or the Note, or may proceed to enforce payments required by this Agreement or Note, or to enforce any other legal or equitable right of the Lender.  If Lender engages legal counsel for the enforcement of any terms of this Agreement or the Note, whether for

suit or other legal services required to secure compliance on the part of the Borrower, Borrower shall pay to Lender upon demand said legal fees and any other expenses incurred by Lender, including, without limitation, court costs, and the fees and expenses of attorneys and paralegals, court reporters, appraisers, consultants, and other experts consulted by Lender.

10. REMEDIES CUMULATIVE. No remedy herein conferred upon the Lender is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

11. INTEREST COMPOUNDED. Any accrued but unpaid interest on the Note shall be added to principal on a monthly basis and interest shall accrue on any accrued but unpaid interest added to principal.

12. ACCESS TO FINANCIALS. Upon thirty (30) days of any written request, the Borrower shall deliver to the Lender any and all financial reports, tax returns and other financial or tax related information requested by the Lender during the term of this Agreement unless required sooner under Section 23.

13. ASSIGNMENT. The Note may be transferred, assigned, pledged, encumbered or hypothecated in any manner in whole or in part by the Lender. The Note may not be assigned or transferred by the Borrower without the Lender's written consent.

14. PAYMENTS. All payments and prepayments of principal of and interest on the Note shall be made in lawful money of the United States of America.

15. NOTICES. All notices, requests, demands and communications which are or may be required to be given hereunder shall be deemed effectively given if and when (i) personally delivered, or (ii) deposited in the United States Mail, postage prepaid, or forwarded by a nationally recognized overnight courier service, to the following addresses:

|  |  |
|---|---|
| If to Borrower: | Timothy G. Kruse DBA Cruzin' Machine<br>Attention: Timothy G. Kruse<br>126 Elvin Hill Rd<br>Maynardville, TN 37807 |
| If to Lender: | Southeast Community Capital Corporation<br>Attention: Ms. Tracey L Larsen<br>1020 Commerce Park Drive, Suite L<br>Oak Ridge, TN 37830 |

16. AMENDMENTS. This Agreement or the Note may be amended only if agreed to in writing by the Borrower and the Lender.

17. COVENANTS BIND SUCCESSORS AND ASSIGNS. All the covenants, stipulations, promises and agreements contained in this Agreement or the Note by or on behalf of the Borrower shall bind its successors and assigns, whether so expressed or not.

18. <u>GOVERNING LAW</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Tennessee, without regards to conflicts of laws principles.

19. <u>VARIATION IN PRONOUNS</u>. All pronouns and any variations thereof refer to the masculine, feminine or neuter, singular or plural, as the context may require.

20. <u>HEADINGS</u>. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

21. <u>TIME OF THE ESSENCE</u>. Time is of the essence for all terms, provisions and conditions of this Agreement.

22. <u>USURY</u>. It is the intention of Lender and the Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event and upon no contingency shall Lender ever be entitled to receive, collect or apply as interest any interest, fees, charges or other payments equivalent to interest, in excess of the maximum rate which Lender may lawfully charge under applicable statutes and laws from time to time in effect. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the highest contract rate permitted by applicable law from time to time in effect, the Borrower and Lender shall, to the maximum extent permitted under applicable law, characterize the non-principal payment as a reasonable loan charge, rather than as interest. Any provision hereof, or of any other agreement between Lender and the Borrower, that operates to bind, obligate or compel the undersigned to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this Section shall be given precedence over any other provision contained herein or in any other agreement between Lender and the Borrower that is in conflict with the provisions of this Section.

19. <u>ADDITIONAL COVENANTS</u>: Borrower agrees to the following:

   a) Timothy G. Kruse shall obtain key-person life insurance or assign a portion of existing life insurance to Lender in the amount of $56,000.
   b) Borrower must provide evidence of and maintain adequate insurance, including liability, on Collateral.
   c) Borrower must agree to Technical Assistance as needed from Lender. There is no charge for this service.
   d) Borrower will furnish current financial statements to Lender quarterly, including at a minimum a profit & loss statement, a balance sheet, and a cash flow report.
   e) Borrower will be required to close all credit card accounts except one for incidental business expenses.

IN WITNESS WHEREOF, this Note has been executed by the Borrower effective as of the day and year first above written.

Timothy G. Kruse DBA Cruzin' Machine

By _____

Timothy G. Kruse
Owner
SSN: 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

_____

Timothy G. Kruse
Individually
SSN: 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

LENDER:
Southeast Community Capital Corporation

By: _____

David R. Bradshaw
Vice President

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me, the undersigned, a Notary Public in and for the state and county aforesaid, personally appeared Timothy G. Kruse, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be the Owner of Timothy G. Kruse DBA Cruzin' Machine, a Tennessee sole proprietorship, and that he, as such owner, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

Witness my hand and seal, this 2nd day February 2007.

_____
Notary Public

My Commission Expires: 10/20/09

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me personally appeared Timothy G. Kruse to me known (or proved to me on the basis of satisfactory evidence) to be the person described in and who executed the foregoing instrument individually, and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal, this 2nd day February 2007.

_____
Notary Public

My Commission Expires: 10/20/09

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me, the undersigned, a Notary Public in and for the state and county aforesaid, personally appeared David
Bradshaw, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon
oath, acknowledged himself to be the Vice President of Southeast Community Capital Corporation and that he, as such
officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

Witness my hand and seal, this 2nd day February 2007.

Danielle Beasley
Notary Public

My Commission Expires: 10/20/09