# *EXHIBIT "C"*

## SECURITY AGREEMENT

SCC Loan Nos. 1071-01, 1071-02, 1071-03                February 2, 2007
                                                                                                          Oak Ridge, Tennessee

This SECURITY AGREEMENT is made and entered into effective on the day, month and year first above written, by and between TIMOTHY G. KRUSE DBA CRUZIN' MACHINE, a Tennessee sole proprietorship (the "Borrower"), whose address is 126 Elvin Hill Rd, Maynardville, TN 37807, and SOUTHEAST COMMUNITY CAPITAL CORPORATION, whose address is 806 South Sixth Street, Nashville, TN 37206 ("Lender").

### WITNESSETH:

WHEREAS, Lender has agreed to lend to Borrower up to the sum of FIFTY SIX THOUSAND Dollars ($56,000.00) (hereinafter referred to as the "Loans"), pursuant to the provisions of those certain Promissory Notes dated of even date herewith, (hereinafter referred to as the "Notes"), incorporated herein by reference; and

WHEREAS, the Loans are to be utilized by Borrower for the purpose of working capital and debt restructure; and

WHEREAS, Borrower has agreed to give to Lender certain security for the repayment of the Loans, and to secure the other indebtedness, liabilities and obligations set forth herein.

NOW, THEREFORE, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Security Interest. To secure the payment of the indebtedness and amounts hereinafter specified, Borrower does hereby assign, transfer, convey and set over to Lender a security interest in and to the following property, and all additions, accessions, replacements, improvements, and substitutions thereto or therefore, and proceeds thereof, including any insurance proceeds, and each and every class thereof, to the extent the same are owned by Borrower, whether the same are now owned by Borrower or are acquired by Borrower after the date hereof, all of which are hereinafter referred to as the "Collateral":

   a. A first lien on all business assets of the Borrower including but not limited to, accounts receivable, contracts, chattel paper, contract rights, documents, trademarks, patents, instruments, proceeds, finished inventory, work-in-progress, raw material, raw inventory, general intangibles, furniture, fixtures, and equipment of every description and kind, whether now owned or hereafter acquired. This security interest shall be documented via a perfected National Financing Statement (Form UCC1).

   b. A first lien on Borrower's 1992 Ford E250 Cargo Van (VIN: 1FTFE24H5NHA44642). This security interest shall be documented via a perfected certificate of title and/or other instrument.

   c. A third lien on Borrower's primary residence located at 126 Elvin Hill Rd, Maynardville, TN 37807 (Union County TN). This security interest shall be documented via a perfected Deed of Trust.

As used herein, the following terms shall have the meaning specified in the Uniform Commercial Code which is from time to time in effect in the State of Tennessee: Accounts, Chattel Paper, Contracts, Contract Rights, Documents, Equipment, Fixtures, General Intangibles, Instruments, Inventory and Proceeds.

2. <u>Liabilities Secured</u>. The security interest herein conveyed shall secure the payment of the following: (a) any and all amounts due, evidenced by the Notes and other loan documents.

3. <u>Borrower's Covenants and Warranties</u>. Borrower hereby warrants and covenants as follows, all of which warranties and covenants shall continue throughout the term of this Agreement, and Borrower shall promptly advise Lender in writing of any changes in any matters herein warranted:

   (a) Borrower's place of business is the address of Borrower stated in the Preamble of this Security Agreement and Borrower will immediately notify Lender of any change in the location of said place of business.

   (b) Borrower is the owner of the Collateral free from any other lien, security interest or encumbrance unless previously noted and no security interest or interests and no financing statement or statements, other than those contemplated by this Agreement, covering the Collateral or proceeds thereof, exists.

   (c) Borrower will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.

   (d) All financial statements and information made or supplied by Borrower calculated to induce this transaction are true and correct.

   (e) Borrower will pay all taxes, assessments, and other governmental charges of every character, levied and assessed against all or any part of the Collateral now or hereafter subject to this Agreement when the same shall become due and payable, and will comply with all laws, regulations and orders of any national, state or municipal government or administrative agency exercising any power or regulation or supervision over Borrower or any of the Collateral, the noncompliance with which will impair the lien of this Agreement upon any of the Collateral subject hereto.

   (f) Borrower will keep accurate and complete records of all of its business and from time to time will permit Lender to examine all of its business records and to make copies thereof. Further, from time to time, Borrower will furnish Lender with such information regarding the Collateral as Lender may request.

   (g) Borrower will execute financing statements or other documents deemed necessary by Lender to perfect or preserve its security interest in the aforesaid Collateral and the proceeds thereof, and will pay the costs and fees of filing or recording such statements or documents pursuant to law.

   (h) Borrower will pay all of the indebtedness secured hereby to Lender as and when the same shall be due and payable, whether at maturity, by acceleration or otherwise,

and will perform all terms of all notes, agreements or instruments evidencing or securing the said indebtedness and the terms of this and any other security agreement between Borrower and Lender.

4. <u>Default in Payment of Insurance and Taxes</u>. Should Borrower fail to pay when due any tax, assessment or governmental charge levied or assessed against any of the Collateral, or in the payment of any premium for insurance required hereunder, and should Lender, in its sole discretion, pay any of the aforesaid obligations of Borrower, then the amount so paid shall be added to the indebtedness secured hereby and shall be due from Borrower to Lender upon demand with interest at the maximum rate allowed by law.

5. <u>Alienation of Collateral by Borrower</u>. Except in the ordinary course of business, Borrower will not sell, offer to sell, transfer or dispose of any of the Collateral or any interest therein unless Lender consents in writing prior thereto, and will keep the Collateral free from unpaid charges, including taxes, and from all liens, encumbrances and security interests, except the lien of this Agreement, suffered voluntarily or involuntarily by Borrower.

6. <u>Default</u>. At the option of Lender, Borrower shall be in default hereunder and the indebtedness secured hereby shall become immediately due and payable without notice upon the happening of any of the following events or conditions ("Event of Default"):

   (a) Any failure to pay, promptly as and when due, the principal and interest of the indebtedness secured hereby or any other monetary obligations or indebtedness of Borrower to Lender;

   (b) Any failure by Borrower to duly observe any covenant, condition, agreement of this Security Agreement, or the Notes;

   (c) Any breach or failure of Borrower to perform any term or condition of any mortgage or deed of trust or security agreement, assignment of rents, loan agreement, or other instrument executed by Borrower in connection with the indebtedness secured hereby or as security for the payment of the Notes;

   (d) The insolvency or bankruptcy of Borrower, the making by Borrower of an assignment for the benefit of creditors, or the consent of Borrower to the appointment of a trustee or receiver or other officer of the court or other tribunal;

   (e) The appointment of a trustee, receiver or other officer of the court for Borrower, or for a substantial part of the properties of Borrower, without Borrower's consent, where no discharge is effected within forty-five (45) days;

   (f) The institution of bankruptcy, reorganization, insolvency, or liquidation proceedings by or against Borrower, and if against Borrower, where such proceeding is consented to by it or has not been dismissed within forty-five (45) days;

   (g) The entry of any judgment against Borrower in excess of One Thousand Dollars ($1,000.00) or the issuance of entry of any attachment, replevin levy or lien against the Collateral, if not discharged, bonded or dismissed within forty-five (45) days;

(h) The giving of any statement, certificate or representations in or pursuant to this Security Agreement or the Notes proving to be untrue in any material respect as of the time made;

(i) The assertion of any claim or priority over this Security Agreement by title, lien or otherwise in any legal or equitable proceeding that is not dismissed or bonded within forty-five (45) days;

(j) The death, insolvency or bankruptcy of any guarantor of the indebtedness secured hereby or any part thereof;

(k) The indictment or conviction of Borrower or any guarantors of the indebtedness secured hereby for the violation of a felony criminal statute and/or for the failure to pay state or federal taxes;

(l) The occurrence of any event or the presence of any condition which causes Lender in good faith to feel insecure regarding the likelihood of Lender's receiving orderly and complete payment according to the terms of the Notes or other documents executed in connection with the indebtedness secured hereby without proceeding against any collateral or seeking payment from any surety or guarantor;

(m) Any material uninsured loss, theft, damage or destruction to the Collateral occurs; or

(n) Borrower disposes of all or any part of the Collateral other than in the ordinary course of business, or divests itself by sale or otherwise of the control over, or any goodwill of, its business, or fails to carry on its business for any reason whatsoever.

Said events shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of ten (10) days after written notice to Borrower pursuant to paragraph 15(e) hereof, and (ii) with regard to any other event stated above for which no time limit is specified, such event continues for a period of fifteen (15) days after written notice to Borrower pursuant to paragraph 15(e) hereof. Said notice provisions and any other notice provisions contained in any other document shall run concurrently and not successively and no notice shall be required, and an Event of Default shall immediately occur, in the event any of said events occur after three (3) or more notices are given pursuant to subparagraphs (i) or (ii) of this paragraph during any twelve (12) month period.

7. Remedies upon Default.

(a) General. In the event of the occurrence of an Event of Default under this Agreement, Lender shall have the rights and remedies contained herein, in all promissory notes or other agreements and instruments providing for, evidencing or securing any of Borrower's obligations to Lender secured hereby, and the rights and remedies provided in Article 9 of the Uniform Commercial Code of the State of Tennessee.

(a) Assembly of Collateral. In the event of the occurrence of an Event of Default, Borrower shall, upon request of Lender, assemble the Collateral and make it available to Lender at a place designated by Lender.

(b) <u>Entry of Borrower's Premises and Repossession</u>. In the event of the occurrence of an Event of Default, Lender may enter Borrower's premises where any of the Collateral is located, and take possession of and remove all or any portion of the Collateral or evidence thereof there from for purposes of disposition pursuant to this Agreement.

(c) <u>Cash or Credit Sales</u>. Borrower agrees that sales for cash or on credit to a wholesaler, retailer or user of property of the type as the Collateral or at public auction or private sale are all commercially reasonable methods of disposition of the Collateral.

(d) <u>Notice of Disposition</u>. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give to Borrower notice of the time and place of any public sale of any of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice pursuant to <u>Paragraph 16(e)</u> hereof, at least ten (10) days before the time of the sale or other disposition, which provisions for notice Borrower agrees are reasonable.

(e) <u>Application of Proceeds</u>. Any proceeds of any disposition of any of the Collateral may be first applied by Lender to the payment of expenses in connection with the exercise of its rights and remedies hereunder, including reasonable attorneys' fees and legal expenses, and any balance of such proceeds shall be applied by Lender toward the payment of the indebtedness secured hereby, but in such order of application as Lender may elect in its sole discretion.

(f) <u>Continuance of Remedies</u>. Until all of the indebtedness secured hereby shall have been paid in full, Lender's rights and remedies regarding disposition of the Collateral, and all other rights, powers and remedies provided to Lender hereunder shall continue to exist, and may be exercised by Lender irrespective of the fact that portions of the liabilities may have been paid.

8. <u>Covenant to Pay Deficiency</u>. Upon the occurrence of an Event of Default, if the sale or other disposition of the Collateral fails to satisfy in full all of the indebtedness secured hereby, and the costs and expenses of retaking, holding, preparing for sale, selling and the like, including reasonable attorneys' fees and expenses incurred by Lender in connection with this Agreement or the indebtedness secured hereby, Borrower shall be liable to and agrees to pay any such deficiency, provided, however, that Lender shall not be required to proceed first against the Collateral but may elect to proceed first or solely against the Borrower or any other collateral for the Loan.

9. <u>Lender's Right to Waive</u>. Lender may correct any default without waiving its default remedy, and without waiving any other prior or subsequent default, may retract any waiver of default that remains uncured by giving Borrower reasonable notice that strict performance of Borrower's obligations under this Agreement will thereafter be required, and may incur reasonable attorneys' fees and expenses in exercising any of Lender's rights and remedies after default. A waiver of any default on one occasion shall not constitute either a waiver of such default on any future occasion or a waiver of any other default. Lender shall not be deemed to have waived any of its rights hereunder or under any other agreement, instrument or paper signed by Borrower unless such waiver be in writing and signed by Lender. No delay or omission on the part of Lender in exercising

any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All of Lender's rights and remedies, whether evidenced hereby or by any other agreement, instrument or paper, shall be cumulative and may be exercised separately or concurrently.

10. <u>Power of Sale and Other Powers</u>. The power of sale and all other powers herein granted by Borrower shall apply to all collateral of any kind or description.

11. <u>Substitution or Exchange of Collateral</u>. If, with the consent of Lender, Borrower shall substitute or exchange other collateral, in place of the Collateral, then all of the rights and privileges of Lender and all obligations on the part of Borrower shall be forthwith applicable to the substituted or exchanged collateral, security or instrument, the same in all respects as with respect to the property originally pledged and held as Collateral hereunder.

12. <u>Indemnity</u>. Borrower will defend, indemnify and hold Lender harmless of and from any and all liability, loss or damage which Lender may incur by reason of this Agreement, and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking to be performed or discharged by Lender under this Agreement. Should Lender incur any liability, loss or damage by reason of this Agreement, or in the defense of any claims or demands with respect thereto, Borrower will immediately, upon the demand of Lender, reimburse Lender for the amount thereof, including all costs and expenses and reasonable attorneys' fees incurred by Lender in connection therewith; provided, however, that nothing contained in this paragraph shall obligate Borrower to indemnify Lender against loss or damage occasioned by Lender's own gross negligence or willful misconduct.

13. <u>Termination</u>. Upon payment in full of all of the principal and interest owing on the Note secured hereby together with any extensions, renewals or modifications thereof, and upon payment of all other indebtedness secured hereunder, this Agreement and the security interest granted hereby shall terminate.

14. <u>Assignment</u>. Borrower shall neither assign its rights nor delegate the performance of its duties hereunder without Lender's prior written permission. Lender may assign its rights and delegate the performance of its duties hereunder, and if Lender does so, the assignee upon notifying Borrower shall be entitled to the performance of all Borrower's duties and to all Lender's rights hereunder. Borrower shall not assert against any such assignee any claim or defense which Borrower may have against Lender.

15. <u>Miscellaneous</u>.

    (a) Borrower agrees that it will, upon the request of Lender, from time to time, execute and deliver to Lender such further instruments and documents, including, without limitation, financing statements, as may by Lender be deemed proper or necessary for the more effectual vesting in Lender of its security interest in the Collateral. Borrower shall pay all costs of filing the same.

    (b) Borrower hereby waives all notices of presentment, demand, protest and notice of dishonor as to any instrument secured hereby.

(c) Subject to the provisions of Paragraph 15 hereof, all provisions herein shall inure to and become binding upon, the heirs, executors, administrators, successors, representatives, receivers, trustees and assigns of the parties hereto.

(d) This Agreement and all amendments hereto, all supplements hereof, and all acts, transactions, agreements, certificates, assignments and transfers hereunder shall be governed by and construed in accordance with the laws of the State of Tennessee.

(e) Any notices required or allowed hereunder shall be in writing and shall be deemed satisfactorily given (and any time period provided for giving such notice herein shall commence) when (i) deposited in the United States Mail, postage prepaid, certified or registered mail, return receipt requested, or forwarded by a nationally recognized overnight courier service to the addresses of the respective parties specified above specified in any document(s) executed between the parties hereto (or such other address as may be specified in a written notice forwarded to all parties hereto as herein specified) or, (ii) personally delivered.

(f) This Agreement is intended by the parties as a final expression of their agreement and is intended as a complete statement of the terms herein stated. This Agreement may not be modified, amended or changed in any manner, nor shall any waiver of any provision hereof be effective, except by an instrument in writing signed by the party against whom enforcement of such modification, amendment, change or waiver is sought.

(g) The paragraph captions in this Agreement are for convenience only and are not to be construed in interpreting this Agreement. The gender and number terms used in this Agreement are used as a reference only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural. If more than one person or party has executed this Agreement as Borrower, their obligations shall be joint and several.

(h) If any term or provision of this Agreement, application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder hereof, or the application of such term or provision to persons or circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(i) The requirements and remedies provided for herein shall be construed to be applicable to the various items of Collateral hereunder to the extent that said requirements and remedies are reasonably applicable thereto.

SIGNATURE PAGES FOLLOW NEXT.

EXECUTED effective on the day, month and year first above written.

BORROWER:
Timothy G. Kruse DBA Cruzin' Machine

By _____
Timothy G. Kruse
Owner
SSN: xxx-xx-2889

_____
Timothy G. Kruse
Individually
SSN: xxx-xx-2889

LENDER:
Southeast Community Capital Corporation

By _____
David Bradshaw
Vice President

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me, the undersigned, a Notary Public in and for the state and county aforesaid, personally appeared Timothy G. Kruse, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be the Owner of Timothy G. Kruse DBA Cruzin' Machine, a Tennessee sole proprietorship, and that he, as such owner, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

Witness my hand and seal, this 2nd day February 2007.

_____ Notary Public
My Commission Expires: 10/20/09

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me personally appeared Timothy G. Kruse to me known (or proved to me on the basis of satisfactory evidence) to be the person described in and who executed the foregoing instrument individually, and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal, this 2nd day February 2007.

_____ Notary Public
My Commission Expires: 10/20/09

STATE OF TENNESSEE
COUNTY OF ANDERSON

Before me, the undersigned, a Notary Public in and for the state and county aforesaid, personally appeared David Bradshaw, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be the Vice President of Southeast Community Capital Corporation and that he, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

Witness my hand and seal, this 2nd day February 2007.

_Danielle Beasley_
Notary Public

My Commission Expires: 10/20/09

[Notary Seal: DANIELLE M. BEASLEY, NL — STATE OF TENNESSEE NOTARY PUBLIC — ANDERSON COUNTY, TN]